## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRIAN ESPY,                           )
                                      )
                    Plaintiff,        )
                                      )
v.                                    )          Case No.  08-2211-EFM-DWB
                                      )
Mformation TECHNOLOGIES,              )
*et al.*,                             )
                                      )
                                      )
                    Defendants.       )
_____ )

## MEMORANDUM AND ORDER

Presently before the court are the following motions:

1.    Plaintiff's Motion to Compel (Doc 12), Response (Doc. 13) and Reply (Doc. 14).

2.    Plaintiff's Motion to Compel and for Sanctions (Doc. 33) and Response (Doc. 38).

3.    Plaintiff's Motion to Compel (Doc. 45), and Response (Doc. 47).

4.    Plaintiff's Third Sealed Motion to Compel and Second Motion for Sanctions (Doc. 53) (Sealed), Response (Doc. 57)[1] and Reply (Doc. 58).

---

[1]  Defendants also filed an unopposed motion for extension of time to file a response to this motion.  (Doc. 56).  That motion is now MOOT since the response has been filed.

5.    Plaintiff's Motion to Strike Certificate of Service of Defendant
      Mformation Technologies, Inc.'s Responses to Plaintiff's Requests
      for Admissions (Doc. 64), Defendant's Response (Doc. 67) and
      Plaintiff's Reply (Doc. 69).

6.    Defendant Mformation's Motion for Leave to File Objections and
      Responses to Plaintiff's Request for 178 Admissions After the
      Expiration of Time or, in the Alternative, Motion to Withdraw
      Admissions, and supporting memorandum (Doc. 65, 66),
      Plaintiff's Response (Doc. 68) and Mformation's reply (Doc. 73).[2]

## BACKGROUND

As evidenced by the numerous motions to compel in this case, discovery

has not gone smoothly.  The court had several conferences with counsel (on

January 30, February 10 and March 6, 2009) in an attempt to get information

related to some of the issues in dispute.  As a result of those conferences, the

court directed that Defendants provide certain information to the court for *in

camera* inspection, including a CD of a secure website created by Defendant

Mformation in connection with its attempts to sell the company.  Those

materials were provided by Defendants.

---

[2]  Also pending before the District Judge is Plaintiff's Motion for Summary
Judgment and supporting memorandum (Doc. 61, 62), Defendants' Response (Doc. 70,
71) Plaintiff's Reply.  (Doc. 76).  Defendants have recently filed a Motion for Partial
Summary Judgment (Doc. 74), but the time for response has not yet expired.

Several of the issues addressed in the motions to compel have been met with the response that the requested information has either been provided or will be provided, or that the parties have resolved any pending disputes.  This only to be followed, however,  by more motions to compel.  Clearly, some of the more recent motions to compel are renewals of earlier motions.  *See e.g.*, Doc. 53 at ¶ 13 (Sealed) ("Plaintiff renews its Motion to Compel and Sanctions (Doc. 33) still under consideration by this Court.").  As a result of the accumulation of motions, the court is uncertain precisely what matters remain in dispute.  However, the court will attempt to address all of the discovery issues identified in the various motions to compel (described above in paragraphs 1-4) rather than address each motion separately.  The court will then address the two motions dealing with Plaintiff's Requests for Admission and Defendant's untimely responses (described above in paragraphs 5-6).  Finally, the court will address Plaintiff's requests for sanctions.

## FACTUAL BACKGROUND OF THE CASE

Before addressing the motions to compel, an abbreviated review of the overall case would be helpful.  Plaintiff seeks commissions for sales he made as an employee of Defendant Mformation, specifically sales to customers Clearwire, Metro PCS, Bell Mobility, Telecom New Zealand, Telus, Sprint

Nextel, Corp. and Sprint WiMax.  (Doc. 33 at 1).  Clearwire was by far the largest transaction at issue in this case.  Apparently that contract was "booked" by Mformation on January 28, 2008.  (Doc. 33 at 3).  Plaintiff resigned from Mformation effective March 19, 2008 as a result of disagreements concerning the calculation of his commissions.  The dispute between the parties concerns in large part the value of the Clearwire contract for purpose of calculation of commissions due to Plaintiff.  Defendants' position is that the contact may have been initially for $14,500,000, but that it had a cancellation clause which, if exercised, would provide for only a $2,200,000 penalty payment and the termination of the contract.  Plaintiff argues that the cancellation clause could only be triggered by a "change of control," and that there was no such change of control.  During discovery, and through a subpoena to Clearwire, Plaintiff discovered that there had been two amendments to the original Clearwire contract: one September 12, 2008, and a second on December 12, 2008. (Doc. 33 at 3).  Defendants apparently have taken the position that these two modifications reduced the value of the Clearwire contract to $9,500,000, and that Plaintiff is not entitled to commissions on that amount since he resigned his employment with Mformation and did not have a role in the negotiation of these two modification agreements.  Plaintiff believes that these two changes were

instituted by Defendants in an attempt to avoid any commission obligation to Plaintiff, and that the Clearwire contract has greater value than represented by Defendants.

At some point in late 2007 or early 2008, Defendant Mformation, through Lehman Brothers, was positioning itself for possible sale.  As part of that process, Mformation established a secure website to which it posted a substantial volume of confidential information about Mformation, including such things as articles of incorporation, board and stockholder meeting minutes, past financial statements, future financial forecasts of revenues, etc. Mformation limited access to this website to companies and individuals who obtained a secure password from Mformation.  The website collected information as to who entered the website and when, not only as to the company that was making the contact, but more specifically the individuals who accessed the site.

Plaintiff believes that Defendants would necessarily have made representations to prospective purchasers concerning the value of the Clearwire contract and he sought to obtain the names of the prospective purchasers with whom Defendants had contact so that he could interview and/or depose those third parties as to any such representations.  During the deposition of Defendant

Mark Edwards, the CEO of Mformation, Edwards refused to disclose the names

of these third parties on the grounds that this information was proprietary and

confidential, and that it was not calculated to lead to the discovery of admissible

evidence.  (*See* Doc. 57 at 1-3).  Edwards testified in his deposition that the

Clearwire deal was a $2.2 million deal because of the cancellation clause, and

> [w]ith any third party, no matter who that third party
> was, in whatever context or any kind of discussion,
> the deal has never been represented in anything other
> than the way I've described it, where it's a 14.4 four
> million dollar deal, but there is -- it as a cancellation
> clause and that the only component of the deal that
> has -- that is guaranteed, so to speak, is 2.2 million
> dollars.

 (Doc. 57 at 3).  In its brief, Defendants also stated that "all of the

representations made to all the third parties are contained in a CD of the secure

website which Defendants finally located and provided to the court for *in*

*camera* inspection."  (Doc. 57 at 3).

     With the assistance of Mformation's counsel and its representative Mr.

Abiona, the court has been able to access the CD of the Mformation website

and has reviewed the information available through that website.  The court has

not found any past or future financial projection or customer information that

specifically identifies Clearwire or the Clearwire contract.[3]  Other hard copy information provided by Defendants for *in camera* inspection does specifically mention the Clearwire contract and its value.  For example, a document entitled "Preliminary Q1 2008 vs. Forecast" contains information as to bookings and has a specific note that states that "$14.5 of Clearwire has cancellation thru Sept 29 ($2.2 M penalty)."  This specific document ("Q1 2008 Results") appears to be part of a package (perhaps a power point presentation) that may have been used by management (John Roberts, CFO) as part of a presentation to the Board of Directors at a May 2, 2008 board meeting.[4]

_____

[3]   The web page did not identify specific customers by name but rather used an alphabetic description such as "Customer A."  Defendants have provided the court with a listing of the customers who were identified on website and those did <u>not</u> include Clearwire.  While much of the information on the website predates the February 2008 date when the Clearwire contract was apparently "booked" by Mformation, some material was posted to the website after February 2008, some as late as October 1, 2008, as to "Customer Revenues."  The Court was told, however, that Clearwire was not included in the listing of Customer Revenues since there had been no revenue related to the Clearwire contract at the time use of the website was discontinued.

[4]  The Court has reviewed the minutes of the May 2, 2008, board meeting, which are on the CD of the website materials.  Those minutes do reflect a financial update by CFO John Roberts concerning the first quarter of 2008.

As part of Plaintiff's most recent motion to compel (Doc. 53) (Sealed), Plaintiff attached numerous e-mails and other documents, which Defendants subsequently produced, that cover the period from May through September, 2008.  (Doc. 57, Ex's A through P) (Sealed).  The e-mails outline preparations within Mformation and Lehman Brothers for a meeting to be held at Lehman Brothers' office in New York on June 2, 2008, between representatives of Mformation, Lehman Brothers and a prospective purchaser.  That purchaser is one of the companies who accessed the website on several occasions though several of its representatives.  The later e-mails discuss questions that the prospective purchaser apparently posed either during or after the June 2 meeting, and also discussed information that Mformation was gathering to provide to the prospective purchaser to answer those questions.[5]

**A.    Plaintiff's Motions to Compel -- Doc's 12, 33, 45 & 53.**

Plaintiff summarizes the matters at issue in his motions to compel in Paragraph 13 (a through h) of Doc. 53 (Sealed), as follows:

---

[5] From the court's review of the CD, it appears that representatives for this particular purchaser accessed the website through at least five separate representatives, all of whom are identified as ones who would attend the June 2, 2008, meeting on behalf of the prospective purchaser.  *See* Doc. 53, Ex's C & D (Sealed).  In fact, these two exhibits actually identify names of two prospective purchasers, but apparently both were to attend the same meeting.  The representatives of these purchaser(s) continued to access the website through at least June 19, 2008 -- two weeks after the meeting.

a.      Plaintiff moves that Defendants be ordered to produce all documents and electronic data associated with the offering for sale of Mformation and/or the valuing of Mformation, particularly Mformations' perceived value of the Clearwire contract and other contracts booked by Plaintiff.

b.      Plaintiff moves that Defendants be ordered to identify each and every entity with whom negotiations occurred concerning the sale of Mformation, together with the identities of the specific contact person or persons for each third party.

c.      Plaintiff moves for amendment of the original scheduling order to allow for additional depositions of the third parties named above.

d.      Plaintiff moves that Defendants be ordered to produce all documents related to the financial condition of Mformation between the months of December 2007 through May 2009.

e.      Plaintiff moves that Defendants be ordered to produce all financial statements and accounting records of Mformation for the months of December 2007 through May 2009.

f.      Plaintiff moves that Defendants be ordered to produce any and all memorandum and other documents presented to the board of directors for Mformation concerning the Clearwire transaction.

g.      Plaintiff moves that Defendant Mark Edwards be ordered to appear for continuation of his deposition and be compelled to respond to any and all questions related to information provided to third parties concerning the value of Mformation's assets, including the agreement between Mformation and Clearwire, along with the identity of all third parties to whom any disclosures were provided, and the specific nature of those disclosures.

h.      Plaintiff moves that Defendants be ordered to produce all documents and electronic data related to the receipt of payments from all contracts booked by Plaintiff.

In their response, Defendants address each of the above requests by Plaintiff. (Doc. 57 at 4-8).

Not mentioned in Plaintiff's latest motion, but discussed in an earlier motion, is the issue of Plaintiff's Rule 30(b)(6) deposition of Defendant Mformation which was previously scheduled to take place in New Jersey, but which was not taken due to the illness of Defendant's designated deponent. (Doc. 33 at ¶ 9).   As to that issue, Defendant Mformation has agreed to bring the Rule 30(b)(6) witness to Kansas City for the deposition.  (Doc. 38 at ¶ 6). Also not mentioned is an issue about Plaintiff's access to a confidential settlement agreement between Defendant and another Mformation employee -- Mr. Mark Ferdinand -- who also had left Mformation's employment and who Plaintiff believed had received commissions of the same type now being denied to Plaintiff.  *See* Doc. 45, Ex. B.[6]

---

[6] Defendant has no objection to providing Mr. Ferdinand's separation agreement as long as Ferdinand is given notice and signs a waiver and release.  (Doc. 38 at 4). Because Defendant has agreed to provide a waiver that would allow Plaintiff to obtain Mr. Mark Ferdinand's personnel file from Mformation, no order appears necessary as to this issue.  However, if such a waiver is not provided by the time of the scheduled status conference on October 6, 2009, the Court will resolve any remaining disputes concerning this matter at the telephone conference.

**1.     *Identity of third parties and continued deposition of Edwards [Plaintiff's Doc. 53 (Sealed), ¶ 13(a), (b) and (g)]***

Defendants have represented, and continue to represent, that all information provided to prospective third-party purchasers about the value of the company was located on the secure website.  Defendants represented to the court that the only contact with prospective purchasers was through their access to the website, and that no follow-up due-diligence meetings were held with any prospective purchasers because the whole sale process terminated in approximately October 2008 when Lehman Brothers imploded.  It now appears from the e-mails attached as exhibits to Doc. 53, that this was not the case.  Those e-mails refer to questions asked by a prospective purchaser, presumably at the June 2, 2008, meeting, and information that Mformation was gathering to submit to the prospective purchaser after the meeting.  In its response to Plaintiff's motion, Defendants only mention the e-mails in passing (with no explanation about their content), deny that they have lied to the court, and continue to state that all representations made to third parties were contained on the website and the CD of the website that was provided to the court.  (Doc. 57 at 1-3).  This appears to be wholly at odds with the information the court has reviewed.

Defendants have acknowledged that the Clearwire contract was booked in February 2008, and due to the significant size of the contract, the court agrees with Plaintiff that is appears likely that questions may have arisen by any interested prospective purchaser about that contract, its value, and any provisions for cancellation.  Notes concerning the Clearwire contract indicate that any right of Clearwire to cancel existed only through September 29, 2008. *See* supra at 7.  Surely any prospective purchaser would want to know the terms and conditions of any clause in the Clearwire contract that could turn a $14.4 million contract into a $2.2 million termination payment, and how likely it might be that the clause would be triggered.  The e-mails attached to Doc. 53 now show that Mformation's representatives, both its company representatives and Lehman Brothers employees who were acting on its behalf, had more communications with at least one or two prospective purchasers than merely making the website available for review, including a formal meeting with the purchaser's representatives.  What, if anything, was said to any prospective purchaser about the Clearwire contract would clearly be information that is reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, in light of the *in camera* materials reviewed by the court and the e-mails attached as exhibits to Doc. 53, the court does not believe that

Defendants can now simply claim that Mr. Edwards' statements in his deposition are a full and complete disclosure of discussions with third parties.

To resolve this particular dispute, the Court therefore orders Defendants to produce to Plaintiff the CD that has been previously provided to the Court for *in camera* inspection, along with the other hard-copy documents that were provided to the Court for *in camera* inspection. Defendants argue that these are proprietary and confidential and suggests that it perhaps could provide a "redacted, printed version of Mformation's representations with respect to the contracts at issue between Defendants and Plaintiff on the DVD data." (Doc. 57 at 4-5). Alternatively, it suggests the appointment of a special master to govern this discovery dispute at Defendants' expense. (Doc. 57 at 5). The Court recognizes that the information at issue is confidential, but it is also dated. The website was not updated after October 2008, so it does not contain current financial information or projections. Furthermore, these documents are to be produced pursuant to a protective order which prohibits their use for any purpose other than this case, and limits their disclosure to Plaintiff, Plaintiff's counsel, and any retained experts for Plaintiff (who will be required to agree to be bound by such a protective order). If the parties cannot agree to how the documents can be used in any future depositions, the Court will address that

issue in connection with a specific deposition.  Also, to the extent that the CD

contains a chart of "Customer Revenue," and the customers are identified only

by alphabetic description, *i.e.,* "Customer A," Defendants will be required to

specifically identify any such customer <u>for which Plaintiff is claiming</u>

<u>commissions</u>:  Clearwire, Metro PCS, Bell Mobility, Telecom New Zealand,

Telus, Sprint Nextel, Corp. and Sprint WiMax.  Defendants need not disclose

any other customer's identity.

Plaintiff will also be allowed to depose any representative of any

prospective third-party purchaser who had any direct communications with

Mformation or its representative Lehman Brothers <u>other than</u> mere access to the

secure website in order to ascertain if any other statements or representations

were made about the value of the company and the Clearwire contract.

Obviously, this will include representatives of the two companies who are

specifically identified in the e-mails attached to Doc. 53 (Sealed).  However,

before Plaintiff is allowed to depose any of the other prospective third-party

purchasers identified on the CD of the secure website, Plaintiff will be required

to complete the deposition of Defendant Mark Edwards and the deposition of

Mformation's Rule 30(b)(6) witness(es) in order to ascertain whether any other

such meetings or communications occurred with any of the other prospective

third-party purchasers.  If communications <u>other than</u> mere access to the secure website did take place with other prospective purchasers, Plaintiff will be entitled to depose representatives of those entities.

In addition, because this information is calculated to lead to the discovery of admissible evidence, Defendants will be required to produce Mark Edwards for continuation of his deposition in Kansas City, Missouri or Kansas City, Kansas, <u>at Defendants' expense,</u> at a time mutually agreed to by the parties, but within the time parameters set in the revised scheduling order entered as part of this Memorandum and Order.  Since the CD will disclose the identities of all third-parties who accessed the website, Plaintiff will be allowed to question Mr. Edwards as to whether there was any other contact between Mformation and its representative Lehman Brothers with any of these entities other than allowing them access to the website.  If so, Plaintiff may question Edwards concerning what communications or meetings occurred, and who was involved in those communications.

Moreover, it is also possible that questions about third-party contacts may also require the testimony of Mformation's Rule 30(b)(6) witness, and Plaintiff will be entitled to question the witness(es) on that topic.  Defendants have offered to produce their Rule 30(b)(6) witness or witnesses in Kansas City

at Defendants' expense, and the Court so directs.  This deposition shall also be scheduled within the time parameters set in the revised scheduling order entered as part of this Memorandum and Order.

Finally, in light of the e-mails that have been recently been produced, Defendants are directed to again review their files and records about any other meetings or communications with any other third-party prospective purchasers which may have occurred, and to produce any documents related to such meetings or communications, including an identification of any specific individuals who may have been involved in such meetings or communications. Those documents, if any exist, shall be produced prior to any continued deposition of Mr. Edwards and the deposition of Mformation's Rule 30(b)(6) witness as set in the revised scheduling order entered as part of this Memorandum and Order.

### 2. *Documents presented to board of directors concerning Clearwire contract [Plaintiff's Doc. 53 (Sealed), ¶ 13(f)]*

It appears that there is some information in Defendants' records about the value of the Clearwire contract that has not been produced to Plaintiff, but that does not necessarily involve any representations to third parties.  This is demonstrated by the documents produced for *in camera* inspection that had a specific note about the Clearwire contract and that appear to be part of a

presentation to the board of directors of Mformation at the May 2, 2008,

meeting concerning results from the first Quarter of 2008.  In reviewing board

minutes on the CD, the court noted that the board of directors regularly had

reports on financial matters from company executives.  Defendants state that

they have already provided any documents or memorandum that were presented

to the board of directors concerning the Clearwire transaction as the result of a

word search for the time period January 1, 2007, through February 2009.  (Doc.

57 at 7).  Presumably, however, the documents they may have produced did <u>not</u>

include the above-described document since Mformation tendered it to the court

for *in camera* inspection.  If there are other similar documents such as the one

identified above that have not been produced, Defendants shall produce those

forthwith, as set in the revised scheduling order entered as part of this

Memorandum and Order.

> ### 3.   *Financial records of Mformation and receipt of payments from contracts booked by Plaintiff  [Plaintiff's Doc. 53 (Sealed), ¶ 13(d), (e) and (h)]*

Plaintiff firsts requests all documents related to the financial condition of

Mformation between the months of December 2007 through May 2009.

Defendants argue that this description is vague and ambiguous, is overly broad

and burdensome, and is not calculated to lead to the discovery of admissible

evidence.  (Doc. 57 at 6).  Defendants did agree to withdraw the objection if the request were more tailored and something that Defendants could reasonably produce, referencing the request for financial statements and accounting records.  The Court agrees that this request is extremely broad and could encompass a substantial volume of records.  Plaintiff's related request for all financial statements and accounting records of Mformation for the same time period is somewhat more tailored.  As to that request, Defendant Mformation states that it believes that it has previously responded to this request "to the extent possible," noting that financial statements for 2008 are not yet available and, as of June 2009, are being reviewed by the auditors.  Now that additional time has passed, those 2008 financial statements should be available and should be produced.

The broader request for all accounting records or all documents related to Mformation's financial condition, however, cause some concern for the Court. Plaintiff argues that it is entitled to these records because Mformation has stated or implied that it was financially unable to pay certain commissions.  This, however, does not appear to be a sufficient reason to require production of all the requested information.  The Court does agree, however, that all financial information concerning the receipt of payments from all contracts for which

Plaintiff is seeking commissions is calculated to lead to the discovery of admissible evidence.  Defendants claim that this information has been produced. (Doc. 57 at 8).  Because of the volume of documents previously produced by Mformation, however, the Court is concerned about which specific documents are responsive to the issue of payments made from these specific contracts.

Plaintiff has argued in prior motions that the records produced by Defendant MFormation were produced in electronic format, not bates stamped and not categorized in response to the specific requests or interrogatories and that this has caused Plaintiff difficulty in accessing and reviewing these records. (Doc. 33 at 2).  Defendants responded to this complaint by representing that the documents were produced in the manner in which they are stored and kept in the usual course of the business of Mformation.  (Doc. 38 at 1-2).

Courts have struggled with the interpretation of Fed. R. Civ. P. 34 which allows production as documents are maintained in the usual course of the producing party's business.   In attempting to define the requirements that should be place on a producing party who chooses to produce documents in the manner they are normally maintained, the courts have attempted to balance the burden on the respective parties.  *In re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, No. 4:08-MD-2004, 2009 WL 152495, at * 2

(M.D. Ga. Jan. 22, 2009)  Generally, courts have concluded that simply dumping a mass of documents on the requesting party may not satisfy the rule's requirements, even though the undifferentiated mass of documents are in the same form as maintained by the producing party.  *Cf. **MGP Ingredients, Inc. v. Mars, Inc.***, No. 06-2318-JWL-DJW, 2007 WL 3010343, at * 3-4 (D. Kan. Oct. 15, 2007) *with **Pass & Seymour, Inc., v. Hubbell Incorporated***, 255 F.R.D. 331, 337-38 (N.D.N.Y. 2008).  *See also **State of Oklahoma v. Tyson Foods, Inc.***, No. 05-CV-329-GKF-SAJ, 2007 WL 1498973 (N.D. Okla. May 17, 2007) (noting that the producing party is obligated to provide some reasonable assistance to the requesting party in the location of responsive documents); ***Valeo Electrical Systems, Inc. v. Cleveland Die & Mfg. Co.***, No. 08-cv-12486, 2009 WL 1803216, at * 1 (E.D. Mich. Jun. 17, 2009) (not requiring additional indexing where the producing party had provided two indices to aid in interpreting and sorting the documents).

The Court believes that while Defendants stated that the 28,000 pages of documents they had produced were produced in the manner they were kept by Mformation in the usual course of their business, Defendants should be required to specifically identify, by index or otherwise, those specific financial records that relate to receipts of payments from all contracts for which Plaintiff is

seeking commissions, and to specify, by index or otherwise, any financial

records of Mformation, from December 2007 through May 2009, that

specifically relate to treatment of those contracts, specifically including the

Clearwire contract.  If there are any such documents that have not already been

produced, Defendants shall produce them prior to the depositions of Mr.

Edwards or Mformation's Rule 30(b)(6) witness(es).

### 4.   *Amendment of the Scheduling Order to allow for additional depositions of third parties, Edwards and Rule 30(b)(6) witness(es)  [Plaintiff's Doc. 53 (Sealed), ¶ 13(c)]*

Plaintiff requests additional time to conduct third party depositions, and

Defendants do not oppose a revision to the scheduling order, agreeing that

additional depositions and other discovery need to be completed.  (Doc. 57 at 5).

Since this case was transferred from Chief Judge Vratil to Judge Melgren,

the schedule, including the trial date, necessarily needed to be changed.  At a

January 30, 2009, telephone conference, the Court vacated the trial date and

pretrial date, and vacated the deadlines for expert disclosures, for completion of

discovery and for the filing of any dispositive motions.  (Minute Entry,

1/30/2009).  The Court has considered the things Defendants are required to do

pursuant to this order and the fact that Plaintiff may wish to depose not only

Edwards and Mformation's Rule 30(b)(6) witness(es), but also other individuals.

Accordingly, the Court issues the following Revised Scheduling Order governing this case:

a. The cutoff for all fact discovery in this case is hereby extended to **December 31, 2009.** All fact discovery shall be served in time to be completed by that date. The limits on interrogatories and depositions set in the initial Scheduling Order (Doc. 4) remain in effect.

b. In order to proceed in an orderly manner with fact discovery, any documents which Defendants are required to produce pursuant to this Memorandum and Order shall be produced on or before **September 30, 2009.**

c. Defendants Edwards and Mformation's Rule 30(b)(6) witness(es) are to be produced for deposition in Kansas City, Kansas or Kansas City, Missouri, on or before **October 30, 2009.** The continued deposition of Mr. Edwards shall not exceed five (5) hours in length; the deposition of Mformation's Rule 30(b)(6) witness(es) shall not exceed eight (8) hours in length.

d. Plaintiff's expert disclosures shall be served on or before **January 18, 2010**; Defendants' expert disclosures shall be served on or

before **February 19, 2010**; rebuttal expert disclosures, if any, shall

be served on or before **March 5, 2010.**

e.      All depositions of expert witnesses shall be completed by **March**

**29, 2010.**

f.      The parties shall submit one single proposed pretrial order to the

Court on or before **March 31, 2009**, and the Pretrial Conference is

hereby set for **<u>April 12, 2010, at 1:30 p.m.</u>** in Room 406, U.S.

Courthouse, Wichita, Kansas.  The undersigned magistrate judge

will conduct the conference.

g.      All dispositive motions shall be filed on or before **April 30, 2010.**

h.      The trial date will be set at the final pretrial conference.

i.      A telephone status conference with the undersigned magistrate

judge is hereby set for **October 6, 2009, at 11:00 a.m.**  The court

will place the call.


**B.      <u>Disputes Concerning Plaintiff's Requests for Admission -- Doc's</u>**
**<u>64, 65, 66, 67, 68 & 69.</u>**

Plaintiff, frustrated about Defendants' cooperation in discovery, submitted

178 Requests for Admission to Defendant Mformation by hand-delivery to

Defendants' attorney on June 15, 2009.  (Doc. 55).  Answers to requests for

admission are due from the responding party 30 days after being served.  Fed. R.

Civ. P. 36(a)(3).  The methods of serving pleadings and other papers is set out in

Fed. R. Civ. P. 5(b)(2), and this includes leaving the pleading at a person's

office, Rule 5(b)(2)(B)(i), or by other means such as mailing, Rule 5(b)(2)(C), or

by other alternative means.  Rule 5(b)(2)(D) through (F).  The 30-day period for

answers to requests for admission is calculated in accordance with Fed. R. Civ.

P. 6.  Where service is made by one of the means outlined in Rule 5(b)(2)(C)

through (F), 3 days are added after the period would otherwise expire as

calculated under Rule 6(a).  Fed. R. Civ. P. 6(d).   In this case, since the requests

were hand-delivered to counsel, only 30 days would be allowed for answers

under Rule 6(a), and that time expired on July 15, 2009.  Defendants did not

serve their answers to the requests until July 20, 2009 (Doc. 63),  erroneously

believing that they were entitled to an additional three days under Rule 6(d).

On July 20, 2009 – 2 hours and 27 minutes before Defendant Mformation

filed its certificate of service of its answers to the requests for admission (Doc.

63) – Plaintiff filed his Motion for Summary Judgment and supporting

memorandum (Doc. 61, 62).  After seeing Defendants' certificate of service of

its answers to the requests for admission, Plaintiff immediately filed a motion

seeking to strike Defendant's certificate of service, arguing that the answers were out of time.  (Doc. 64).

Two days later, and before responding to the motion for summary judgment, Defendant Mformation filed its motion seeking leave to file objections and responses to plaintiff's request for 178 admissions after the expiration of time or, in the alternative, to withdraw admissions.  (Doc. 65, 66).  Briefing on all the motions related to the untimely filing of the answers to requests for admission is now completed.

In seeking leave to file responses to Plaintiff's requests for admission out of time, Defendant relies on the provisions of Fed. R. Civ. P. 6(b)(1)(B), which allows the court to extend the time for the doing of an act, even where the party seeking the extension does not file a motion for extension until after the time has expired.  However, to do so, the court must find that the requesting party "failed to act because of excusable neglect."  *Id.*  This Court's local rules contain a similar provision.  D. Kan. Rule 6.1 covers motions for extensions of time, and "provides that an extension of time will not be granted unless the motion is made before the expiration of the specified time, except upon a showing of excusable neglect."

The U.S. Supreme Court addressed the issue of "excusable neglect" in

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380,

113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).  The *Pioneer* Court noted that the

common meaning of "neglect" is "'to give little attention or respect' to a matter,

or . . . 'to leave undone or unattended to *esp[ecially] through carelessness*.'"  *Id*.

at 388, 113 S.Ct. at 1494-95 (emphasis in *Pioneer*) (quoting Webster's Ninth

New Collegiate Dictionary 791 (1983)); *see also City of Chanute, Kansas v.*

*Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (quoting

*Pioneer*).  The *Pioneer* Court also noted that although inadvertence, ignorance

of the rules or mistakes construing the rules do not usually constitute excusable

neglect, that concept "is a somewhat 'elastic concept' and is not limited strictly

to omissions caused by circumstances beyond the control of the movant."  507

U.S. at 392.   Finally, *Pioneer* concluded that the determination of excusable

neglect was, at bottom, an equitable determination, taking account of all relevant

circumstances concerning the party's omission.  507 U.S. at 395.  The

circumstances to consider are (1) danger of prejudice to the opposing party, (2)

the length of the delay and its potential impact on the proceedings, (3) the reason

for the delay, including whether it was within the reasonable control of the

movant, and (4) whether the movant acted in good faith.  *Id.*

In this case, the court cannot find that the short delay of only a few days created a danger of prejudice to Plaintiff.  Also, while Plaintiff argues that Defendants' general conduct in discovery of this case indicates a lack of good faith, the Court does not believe that there has been any lack of good faith in connection with the actual attempt to respond to Plaintiff's Requests for Admission.  Therefore, the only remaining issue is the reason for the delay.  Here, it is uncontested that Defendant Mformation's counsel neglected the July 15, 2009, response deadline.  The issue before the Court, therefore, is whether such neglect was excusable.

Defendant argues that "[s]ecretarial and calendaring error is firmly established in the case law of this jurisdiction and others as 'excusable neglect.'" (Doc. 66 at 3; Doc. 65, ¶ 13.)  Unfortunately, Defendant then fails to cite any case from either the District of Kansas or the Tenth Circuit that supports this broad proposition, instead citing cases from other jurisdictions:  *Walter v. Blue Cross & Blue Shield United of Wisc.*, 181 F.3d 1198, 1201-02 (11th Cir. 1999) (finding excusable neglect where counsel's former secretary failed to record the applicable deadline and classifying this as "innocent oversight."); *Cryer v. InterSolutions, Inc.*, No. 06-cv-2032, 2007 WL 1191928 at * 6 (D.D.C. Apr. 20, 2007) (finding excusable neglect where counsel calendared the date for filing a

motion to certify a class based upon the filing date of an amended complaint rather than the initial complaint).[7]  In his response, Plaintiff basically relies on the statement in ***Pioneer***, 507 U.S. at 392, that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect' . . . " and urges that Defendants' prior conduct in discovery requiring the filing of multiple motions to compel is indicative of bad faith and has resulted in prejudice to Plaintiff.  (Doc. 68 at 10-12).

The definition and application of the concept of "excusable neglect," a phrase used in several rules and statutes, has engendered a substantial volume of opinions, many of which are difficult to reconcile.  This court has previously found excusable neglect due to counsel's mistaken calculation of a due date.  ***See Potter v. Health Care Authority***, No. 03-1326-WEB-DWB, Doc. No. 61, Order of February 8, 2005; ***McCloud v. Board of Geary Co. Comm's***, No. 06-1002-MLB-DWB, Doc. No. 69, Order of August 21, 2007.  Similarly, Judge Brown has found excusable neglect where a counsel's support staff made a clerical error

---

[7] Other cases cited by Defendant are not particularly persuasive.  ***See e.g.***, ***Fidelity Federal Sav. & Loan Ass'n v. Felicetti***, 148 F.R.D. 532, 533 (E.D.Pa., 1993) which found excusable neglect from counsel's inadvertent calculation of a response date.  That case was decided only two months after the Supreme Court's opinion in ***Pioneer***, and does not even cite or discuss the ***Pioneer*** case.  Likewise, Defendant's citation of a state court case from Florida is not helpful.

in calendaring the due date.  ***Mohankumar v. Dunn,*** No. 97-1555-WEB, 1999 WL 1253053, at * 1 (D.Kan. Dec. 22, 1999).  Judge Lungstrum found excusable neglect concerning a response date due to miscommunication in counsel's office and lack of familiarity with the local rules, noting that ***Pioneer*** had acknowledged that some occasions justify a finding of excusable neglect even when a party's delay is caused by ignorance of the rules.  ***White v. O'Dell Industries, Inc.***, No. 99-2315-JWL, 2000 WL 127267, at * 2 (D.Kan. Jan. 14, 2000) (*citing* ***Pioneer***, 507 U.S. at 392).

On the other hand, Judge Crow has concluded that counsel's failure to read clear procedural rules is not excusable neglect.  ***Thomas v. Board of Educ, U.S.D. 501***, 177 F.R.D. 488, 490-91 (D. Kan. 1977).  And, in a recent case also involving the issue of the 3-day extension where pleadings are mailed, Judge Rushfelt has held that counsel's error in misconstruing Fed. R. Civ. P. 6(d) did not constitute excusable neglect.  ***City of Shawnee, Kansas v. Argonaut Insurance Co.***, No. 06-2389-GLR, 2008 WL 2699906, at * 4 (D.Kan. Jul. 2, 2008).  In both of these cases, the error was one of interpretation of the rules governing the time to file.  In both cases, the court noted that the rules and case law were clear and unambiguous if only counsel had conducted quick research of law.

In the present case, the neglect or error is the failure to recognize the fact that the requests were hand-delivered rather than some legalistic interpretation of Rule 6(d) itself.  While Defendant acknowledges that hand-delivery is an accepted method of service of pleadings, it argues that this method is "unusual" and this "unusual method of service caused the three-day miscalendaring." (Doc. 73 at 2).  Although the advent of electronic filing may have made hand-delivery of pleadings less frequent in day-to-day practice, the court cannot agree that hand-delivery of pleadings is "unusual."  However, it is probably true that in today's legal practice more pleadings are regularly served electronically or by mail than by hand-delivery.  Therefore, persons, like the paralegal in this case, may be careless in checking the certificate of service to ascertain precisely how service was effected and therefore wrongfully assume that the 3-day period should be added to the response time in virtually all instances.  That appears to be what happened in this case.  The Court believes that this is the type of neglect that is contemplated by the phrase "excusable neglect."  For this reason, the Court finds that Defendant has met its burden of showing excusable neglect and its motion should be granted and the answers to the Requests for Admission are hereby allowed to be served out of time.[8]

---

[8] Because the court has found excusable neglect and allowed the answers to be filed out of time, it does not need to reach Defendant's alternative request that Defendant

### C.    Plaintiff's Request for Sanctions.

In two of its motions to compel, Plaintiff sought sanctions against Defendants.  *See* Doc. No's 33, 53.  In its first request for sanctions, Plaintiff requested that he be reimbursed for all costs associated with discovery from Clearwire, including costs for service of a subpoena to Clearwire and the costs for any deposition of Clearwire, including travel to Seattle, court reporter fees and attorneys fees at $250 per hour.  Plaintiff also sought all expenses associated with the continuation of the depositions of Mark Edwards and the Rule 30(b)(6) deposition of Defendant Mformation, including travel to Defendant's location in New Jersey, court reporter costs and attorneys fees.  (Doc. 33 at 8).  In its second request for sanctions, in addition to requesting the same costs concerning discovery of Clearwire, Edwards and Mformation, Plaintiff also sought an order striking Defendants' responsive pleadings and entering judgment in Plaintiff's

---

be allowed to withdraw the admissions pursuant to the provisions of Fed. R. Civ. P. 36(b). Also, because Plaintiff merely sought to strike Defendant's responses to the requests for admission rather than proceeding under Fed. R. Civ. P. 36(a)(6) to determine the sufficiency of an answer or objection, the court is not at this time ruling on the viability of any of the answers or objections to the specific interrogatories.  If Plaintiff wishes to contest the answers or objections, it is free to do so by filing an appropriate motion within 30 days after the entry of this order and after meeting and conferring with Defendant to attempt to resolve any specific objections.  To the extent that Defendant may continue to claim that 178 requests for admission are burdensome or improper, it should review this Court's opinion in ***Heartland Surgical Speciality Hosp. v. Midwest Division, Inc.***, No. 05-2164-MLB-DWB, 2007 WL 3171768 (D. Kan. Oct. 29, 2007).

favor and the costs associated with the filing of pleadings concerning this longstanding discovery dispute.  (Doc. 53 at 6).

Some of Plaintiff's requests have already been addressed in this Memorandum and Order.  For example, the Court has ordered that Defendant Mformation be required to produce Mark Edwards for the continuation of his deposition and to produce Mformation's Rule 30(b)(6) witness for deposition, both to be taken in the Kansas City metropolitan area at Defendants' cost.  *See supra* at page 15.  Thus, all travel and court reporter's expenses for both of these depositions are to be borne by Defendants.

Plaintiff is also entitled to his attorneys' fee for the time spent in completing the deposition of Mark Edwards because that continued deposition is the direct result of the Court's granting, in part, of Plaintiff's motions to compel in this Memorandum and Order.  *See* Fed. R. Civ. P. 37(a)(3)(B)(i) and 37(a)(5)(A).  Plaintiff has requested fees at the rate of $250 per hour, and the Court has limited the length of the continued deposition of Mr. Edwards to not more than five hours.  *See supra* at page 22.  Thus, the maximum fee award for this continued deposition would be $1,250.  If the parties are unable to resolve any dispute concerning this fee award, they shall contact the court for a hearing date.

Plaintiff will not be allowed attorneys fee for conducting the Rule 30(b)(6) deposition of Mformation.  Plaintiff had previously noticed that deposition and it was only delayed due to illness of the deponent.  As previously noted, *supra* at pages 10, 15, Defendants have voluntarily offered to bring the 30(b)(6) witness to Kansas City for deposition and the Court has directed this procedure.  Under these circumstances, Plaintiff has not established any right to reimbursement of his attorneys fees for the taking of this deposition.

As to the request for expenses concerning the Clearwire discovery, the Court will deny that request, without prejudice to renewal in the future.  It appears that Plaintiff intended to depose Clearwire notwithstanding the Court's ruling as to whether Plaintiff could also depose any third-parties who met with Mformation about buying the business.  If, after the Clearwire deposition has been taken, Plaintiff believes that grounds exist to seek sanctions related to that specific discovery, it may renew the request for those expenses.

Finally, because the Court has granted much of relief sought in Plaintiff's motions to compel, Plaintiff is entitled to the costs and attorneys fees required to file such motions.  However, after review of all of Plaintiff's motions, the Court believes that these expenses should be limited to the preparation and filing of the two main motions to compel: Doc. 33 and Doc. 53.  Within 15 days of the date

of this Order, Plaintiff shall submit to Defendants' counsel his calculation of such fees.  The parties shall thereafter meet and confer to see if they can reach agreement as to the amount of these fees.  If no agreement can be reached, Plaintiff's counsel shall contact the Court for a hearing date on this issue.

Plaintiff's request for additional sanctions, including an order striking Defendants' pleadings and entering judgment for Plaintiff, are hereby denied.

## CONCLUSION

As set forth above in this Memorandum and Order

1.   Plaintiff's motions to compel (Doc No's 12, 33, 45 and 53) are GRANTED in PART and DENIED in PART;

2.   Defendants' Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion to Compel (Doc. 56) is MOOT;

3.   Plaintiff's Motion to Strike Certificate of Service of Defendant Mformation Technologies, Inc.'s Responses to Plaintiff's Requests for Admission (Doc. 64) is DENIED;

4.   Defendant Mformation's Motion for Leave to File Objections and Responses to Plaintiff's Request for 178 Admissions After the Expiration of Time (Doc. 65) is GRANTED;

5.      Plaintiff's requests for entry of sanctions (Doc. No's 33, 53) are
        GRANTED in PART and DENIED in PART;

6.      A revised scheduling order governing completion of discovery and
        preparation for trial is hereby entered as set forth above, including a
        telephone status conference to be held on **October 6, 2009 at 11:00
        a.m.**


IT IS SO ORDERED.

Dated at Wichita, Kansas this 9th day of September, 2009.

                              s/  DONALD W. BOSTWICK
                              U.S. MAGISTRATE JUDGE